**Not for Publication**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|   |   |
|---|---|
| THE ESTATE OF ULISSES M. RODRIGUEZ, et al., | |
| Plaintiffs, | Civil Action No. 18-4547 (ES) |
| v. | OPINION |
| CORR. OFFICER JOHNSON, et al., | |
| Defendants. | |

**SALAS, DISTRICT JUDGE**

This matter is before the Court upon Defendant Corrections Officer Baltimore,[1] Corrections Officer Fortune, Corrections Officer O'Neil, Gary Lanigan, and George Robinson's (collectively, "Defendants'")[2] motion to dismiss Plaintiffs Jessie Inez Rodriguez and the Estate of Ulisses M. Rodriguez's (collectively, "Plaintiffs'") Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.E. No. 17 ("Mot.")). Plaintiffs filed opposition to the motion (D.E. No. 20 ("Opp.")); and Defendants filed a reply (D.E. No. 23). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* D.N.J. Civ. R. 78.1(b).

As set forth below, the Court GRANTS-in-part and DENIES-in-part Defendants' motion to dismiss.

---

[1] Officer Baltimore was apparently not named in the Amended Complaint. (*See generally* D.E. No. 16).

[2] In this Opinion, the Court will refer collectively to the relevant defendants who are corrections officers as "Defendant Corrections Officers." (*See* D.E. No. 16, Amended Complaint, ¶¶ 13–22). Notably, this class of persons is not coextensive with "Defendants," *i.e.*, the defendants listed above who have moved to dismiss. (*Compare* Mot., *with* D.E. No. 16, Amended Complaint, ¶¶ 13–21 (naming the Defendant Corrections Officers)).

**I. Background**[3]

On November 24, 2017, while Ulisses M. Rodriguez ("Decedent") was incarcerated at Northern State Prison, he became visibly disturbed and began yelling, causing Defendant Johnson to appear at his cell. (D.E. No. 16, Amended Complaint ("Am. Compl."), ¶¶ 27–28). Because Decedent was displaying signs he was under the influence of a controlled substance, Defendant Johnson called for Defendant Sgt. Jane Doe Corrections Officer, a commanding officer in Decedent's housing unit, to ask whether she should call a "code 33," which was designated for medical emergencies. (*Id.* ¶¶ 29–30). Defendant Sgt. Jane Doe Corrections Officer declined Defendant Johnson's request for a "code 33" and instead instructed her to call a "code 53," which was designated for emergency situations involving fighting. (*Id.* ¶ 31). Upon the calling of a "code 53," Defendant Corrections Officers dressed in tactical gear and Defendant Area Lt. Jane/John Doe Corrections Officer arrived at Decedent's cell. (*Id.* ¶¶ 32–33).

When they entered his cell, Decedent was sitting on the toilet inside his cell with his pants around his ankles. (*Id.* ¶ 33). After securing the door, Defendant Corrections Officers entered Decedent's cell and grabbed him, slammed his body facedown onto the floor, and placed his hands in cuffs behind his back. (*Id.* ¶ 35). Defendant Corrections Officers proceeded to assault Decedent with their fists, feet, and tactical batons, all while Decedent lay in a defenseless position with his hands cuffed behind his back. (*Id.* ¶ 36). Defendant Corrections Officers then dragged Decedent from his cell and, despite repeated pleas that he could not breathe, again slammed him face-first into the floor just outside of his cell. (*Id.* ¶ 37). During this time, neither Defendant Sgt. Jane Doe Corrections Officer nor Defendant Lt. Jane/John Doe Corrections Officer took action to deescalate

---

[3] The Court must accept Plaintiff's factual allegations as true for purposes of resolving the pending motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bistrian v. Levi*, 696 F.3d 352, 358 n.1 (3d Cir. 2012).

the encounter. (*Id.* ¶ 38). Decedent was lifted to his feet and led down a flight of stairs to the first floor of the corrections unit, where he collapsed; then Defendant Corrections Officers lifted Decedent and carried him to a hallway where again he was slammed face-first into the floor. (*Id.* ¶ 39). Defendants reentered the first floor of the housing unit carrying Decedent's motionless body into the showers where blood was rinsed from Decedent. (*Id.* ¶ 40). Later that day, Decedent passed away. (*Id.* ¶ 41).

According to the State's Medical Examiner, Decedent's cause of death was "acute heroin poisoning." (*Id.* ¶ 42). Upon information and belief, the wounds visible upon Decedent were ignored, overlooked, or not considered as contributing to his cause of death by the State's medical examiner. (*Id.*). A second autopsy identified injuries inconsistent with self-inflicted harm, including a fractured sternum and other injuries to Decedent's head, face, and limbs. (*Id.* ¶ 43). In addition to findings of codeine, morphine, and heroin in Decedent's toxicology report, the State's Medical Examiner discovered a folded paper possibly containing drugs lodged in Decedent's esophagus. (*Id.* ¶ 44).

On March 28, 2018, Plaintiffs filed their initial complaint in this matter. (D.E. No. 1). Defendants filed a motion to dismiss (D.E. No. 13) and, in response, Plaintiffs filed their Amended Complaint (D.E. No. 16). Thereafter, Defendants filed the instant motion to dismiss. (D.E. No. 17 (the "Motion")). In the Motion, Defendants argue that Plaintiffs have not sufficiently identified the individuals alleged to have used excessive force against Decedent; they are entitled to qualified immunity for their alleged failure to administer emergency medical care to Decedent; Plaintiffs fail to allege any personal involvement by Defendants Lanigan and Robinson; the official capacity claims against Defendants Lanigan and Robinson must be dismissed because they are not

"persons" under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA"); and that Plaintiffs fail to allege sufficient facts to state a conspiracy claim.[4]

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Determining whether there is "a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

"When reviewing a motion to dismiss, '[a]ll allegations in the complaint must be accepted as true, and Plaintiff must be given the benefit of every favorable inference to be drawn therefrom.'" *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (quoting *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992)). But the Court is not required to accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *See Iqbal*, 556 U.S. at 678.

Thus the inquiry is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus*, 641 F.3d at 563.

---

[4] Defendants also argue that Plaintiffs' tort claims must be dismissed for failure to file a Notice of Claim. In their Opposition, however, Plaintiffs clarify that they do not raise any tort claims in their Amended Complaint. (Opp. at 19–21).

4

Finally, "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

**III. Discussion**

**A. Excessive Force**

The Eighth Amendment protects inmates from the "unnecessary and wanton infliction of pain[.]" *Whitley v. Albers*, 475 U.S. 312, 320 (1986). "In an excessive force claim, the central question is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Hudson v. McMillian*, 502 U.S. 1, 7 (1992)).

In the Motion, Defendants argue that because Plaintiffs do not "specifically identify which officer or officers actually participated in the alleged 'brutal beating' of the Decedent," the claim for excessive force must be dismissed against all of Defendants. (Mot. at 7). A review of the Amended Complaint, however, reveals that Plaintiffs make several specific allegations of use of force by "Defendant Corrections Officers," who are clearly identified as Defendants Johnson, McGee, Fortune, Castro, O'Neil, Diaz, Sergeant Jane Doe, Area Lieutenant Jane/John Doe, and Jane/John Doe Corrections Officer 1–10. (Am. Compl. ¶¶ 35–39 & ¶ 22 ("The Defendants named in paragraphs 13–21 above are referred [to] collectively herein as the 'Defendant Corrections Officers'")). While Plaintiffs may make other allegations about Officer Johnson and Sergeant Jane Doe, that does not preclude them from also taking part in the alleged assault of Decedent: The Amended Complaint clearly states that *all* Defendant Corrections Officers participated in the

5

assault on Decedent. (*See* Am. Compl. ¶¶ 35–39). Taking those allegations as true at this motion to dismiss stage, the Court finds that Plaintiffs have sufficiently stated a claim of excessive force against the "Defendant Corrections Officers."[5] Thus the Motion to dismiss this claim on this basis is denied.

### B. Denial of Medical Treatment:  Qualified Immunity

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (citing *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam)) (cleaned up).  To determine whether a government official is entitled to qualified immunity, a court may begin with either prong of the analysis outlined in *Saucier v. Katz*, 533 U.S. 194 (2001), using the flexible approach endorsed in *Pearson*. *Id.* at 287.  One prong asks whether "taken in the light most favorable to the party asserting the injury . . . the facts alleged show the officer's conduct violated a constitutional right." *Saucier*, 533 U.S. at 201.  The other prong inquires "whether the right was 'clearly established' at the time of [the] defendant's alleged misconduct.'" *Id.*

"Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Brosseau v.*

---

[5] Defendants rely on the recent Third Circuit case, *Jutrowski v. Twp. of Riverdale*, in support of their argument that Plaintiffs must identify each officer's involvement in the assault to prevent dismissal. *See* 904 F.3d 280, 291 (3d Cir. 2018).  In *Jutrowski*, the court held that "in the face of *[a] motion for summary judgment*, a § 1983 plaintiff must produce evidence supporting each individual defendant's personal involvement in the [beating] to bring that defendant to trial." *Id.* at 291 (emphasis added).  Because only one officer assaulted the plaintiff, and the plaintiff could not identify which officer it was, the court determined that all of the officer defendants were entitled to summary judgment. *Id.* at 293.  Beyond the fact that *Jutrowski* was at the summary judgment phase, the court in *Jutrowski* also distinguished its prior holding in *Smith v. Mensinger*, 293 F.3d 641 (3d Cir. 2002).  In *Smith*, it was not a question of *whether* the multiple defendant officers each participated in the beating, but rather the *extent* of their participation; therefore, summary judgment was not appropriate. *Id.* at 290–291.
Here, as discussed above, and as in *Smith*, it is not a question whether each Defendant Correction Officer participated in the assault, but rather the extent of his or her participation. *See id.*

*Haugen*, 543 U.S. 194, 198 (2004) (per curiam). Although the Supreme "Court's caselaw does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White*, 137 S. Ct. at 551 (internal quotation marks omitted). In other words, existing law must have placed the constitutionality of the officer's conduct "beyond debate." *See Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). This demanding standard protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted. This requires a high "degree of specificity." We have repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced. A rule is too general if the unlawfulness of the officer's conduct does not follow immediately from the conclusion that [the rule] was firmly established.

*D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018) (cleaned up). The burden of establishing the affirmative defense of qualified immunity lies with the party seeking to invoke it. *Thomas v. Independence Twp*, 463 F.3d 285, 292 (3d Cir. 2006); *Hicks v. Feeney*, 850 F.2d 152, 159 (3d Cir. 1988).

In the Motion, Defendants argue that they are entitled to qualified immunity on Plaintiff's "deliberate indifference claims" because there is "no clearly established law that states that corrections officers must have the medical training to diagnose as a drug overdose what presents as violent inmate behavior." (Mot. at 8 & 11). Despite their reliance on only the "clearly established" prong of qualified immunity, Defendants do not discuss any law dealing with medical training for corrections officers, drug overdoses, or other similar issues. (*See, e.g.*, *id.*). Instead, Defendants provide only several pages of boilerplate language regarding the general standards for

7

qualified immunity and a limited recitation of the facts alleged in the Amended Complaint. (*See* Mot. at 8–13). In light of this insufficient briefing for their affirmative defense, the Court will deny the motion to dismiss on this basis *without prejudice*. *See Murphy v. Middlesex Cty.*, No. 15-7102, 2019 WL 259607, at *9 (D.N.J. Jan. 17, 2019); *Obataiye v. Lanigan*, No. 14-5462, 2016 WL 5387626, at *12 (D.N.J. Sept. 26, 2016).

## C. Supervisory Defendants

Defendants argue that the claims against Lanigan and Robinson should be dismissed in their entirety because Plaintiffs do not allege any specific facts about their personal involvement. (Mot. at 13).[6] Defendants argue that the allegations against Lanigan and Robinson are instead based on an impermissible theory of respondeat superior. (*Id.*)

Personal involvement by the defendant in an alleged constitutional violation is central to a § 1983 claim, and liability cannot rest on a theory of respondeat superior. *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). Supervisory liability generally requires some affirmative conduct by the supervisor, such as a supervisor's implementation or maintenance of a policy, practice, or custom that caused the plaintiff constitutional harm. *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010).

---

[6] Defendants argue that the official capacity claims against Lanigan and Robinson should also be dismissed because they are not "persons" under § 1983. Defendants are correct. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself. We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."). Any intended claim under the NJCRA would similarly fail. *See Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 856 (3d Cir. 2014) ("New Jersey district courts have interpreted the NJCRA as having incorporated the Supreme Court's decision in *Will* that, for purposes of § 1983, states and state officials acting in their official capacity are not amenable to suit."); *see also Didiano v. Balicki*, 488 F. App'x 634, 637-39 (3d Cir. 2012) (interpreting the definition of "person" in N.J.S.A § 1:1-2).

If Plaintiffs were seeking injunctive relief, rather than monetary relief, Defendants Lanigan and Robinson in their official capacities may properly be considered "persons." *See Will*, 491 U.S. at n.10 ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State.").

Hence, there are two potential theories of supervisory liability. *See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Under the first theory, defendants may be sued as policy makers "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, custom, or practice which directly caused [the] constitutional harm.'" *Id.* (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). The second theory of liability provides a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations. *See Baker v. Monroe Twp.*, 50 F.3d 1186, 1190–91 (3d Cir. 1995).

The Court of Appeals in *Barkes v. First Correctional Medical, Inc.*, reaffirmed its four-part standard, established in *Sample v. Diecks*, for determining whether an official may be held liable under § 1983 for implementing deficient policies. *See Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 317 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 135 S.Ct. 2042, 2043 (2015) (citing *Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989)). Under *Sample*, to find that a supervisor acted with deliberate indifference as a policymaker,

> the plaintiff must identify a supervisory policy or procedure that the supervisor defendant failed to implement, and prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory procedure.

*Barkes*, 766 F.3d at 330.

Failure to train or supervise claims "are generally considered a subcategory of policy or practice liability." *See Barkes*, 766 F.3d at 316. A failure to train claim requires a plaintiff to "identify a failure to provide specific training that has a causal nexus with his or her injury and

9

must demonstrate that the failure to provide that specific training can reasonably be said to reflect a deliberate indifference to whether constitutional deprivations of the kind alleged occur." *Palakovic v. Wetzel*, 854 F.3d 209, 233 (3d Cir. 2017) (cleaned up).

Deliberate indifference in the supervisory context may be demonstrated by "(i) showing that a supervisor failed to adequately respond to a pattern of past occurrences of injuries like the plaintiff's [and] (ii) by showing that the risk of constitutionally cognizable harm was 'so great and so obvious that the risk and the failure of supervisory officials to respond will alone' support the finding that the two-part test is met." *Beers–Capitol v. Whetzel*, 256 F.3d 120, 136–37 (3d Cir. 2001) (citing *Sample*, 885 F.2d at 1099).

Here, Plaintiffs have failed to allege sufficient facts to state a claim against Defendants Robinson and Lanigan. The Amended Complaint contains no facts that lead plausibly to the conclusion that these Defendants were aware of, or deliberately indifferent to, the risks of excessive use of force; the failure to provide appropriate medical attention; or the "flow of illegal drugs into Northern State Prison." (*See generally* Am. Compl.). The only relevant fact alleged regarding these two defendants is that they "were aware of their statutory responsibility to train correctional health personnel and corrections officers to recognize the signs of overdose and to intervene to reverse the effects." (*See* Am Compl. ¶ 55). Such a conclusory statement, without any factual support, is insufficient to state a supervisory liability claim against Defendants Robinson and Lanigan. *See Iqbal*, 556 U.S. at 678; *Santiago*, 629 F.3d at 132 (explaining that "mere restatements of the elements of [a plaintiff's] supervisory liability claims . . . are not entitled to the assumption of truth"). Accordingly, the Motion will be granted as to Defendants Robinson and Lanigan.[7]

---

[7] It appears Plaintiffs misunderstand Defendants' argument on this ground: They point to several places in the Amended Complaint where the "Supervisory Defendants" allegedly exhibited "deliberate indifference." (*See* Opp. at

### D. Conspiracy

Defendant Corrections Officers next move to dismiss Plaintiffs' conspiracy claim, arguing that it fails to state a claim under Rule 12(b)(6). In the Amended Complaint, Plaintiffs allege:

> During the aforementioned occurrence, Defendant Corrections Officers, collectively and/or individually, engaged in a course of conduct, via threats of retaliation and physical force, in an attempt to prevent inmates of Decedent's housing unit from witnessing the conduct described herein. Since the aforementioned occurrence, furthermore, the Defendant Corrections Officers, collectively and/or individually, engaged in a course of conduct designed to delay and impair the investigation into the use of excessive and unreasonable force, without reason or cause, and the deliberate indifference to the Decedent's beating at the hands of the Defendant Corrections Officers and heroin overdose. Further, the Defendant Corrections Officers did conspire with one another to cover up the excessive use of force and torture.

(Am. Compl. ¶¶ 95–97).

Civil rights conspiracies brought under Section 1983 require a "meeting of the minds," and to survive screening or a motion to dismiss, plaintiffs must provide some factual basis to support the existence of the elements of a conspiracy, namely, agreement and concerted action. *See Startzell v. City of Phila.*, 533 F.3d 183, 205 (3d Cir. 2008) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)). The Court of Appeals has also recognized a theory of a § 1983 conspiracy to cover up constitutional violations, which occurs when the defendants have conspired to prevent a potential plaintiff from obtaining the information needed to make a valid legal claim, implicating the First Amendment right of access to the courts. *See Jutrowski*, 904 F.3d at 295–98.

Here, the exact nature of Plaintiffs' conspiracy claim is unclear. Plaintiffs allege that during the incident, Defendants threatened inmates in Decedent's housing unit with retaliation and

---

17). The "Supervisory Defendants" to whom Plaintiffs are referring, however, are not Defendants Robinson and Lanigan, but rather Sergeant Jane Doe and Area Lieutenant Jane/John Doe Corrections Officers. (*Id.*). None of the facts Plaintiffs highlight relate to Defendants Robinson or Lanigan. (*See generally id.*).

11

violence to prevent them from witnessing the alleged assault on Decedent, but they provide no further information.  (*See generally* Am. Compl. ¶¶ 95–97). Similarly, Plaintiffs allege that after the incident, Defendant Corrections Officers "engaged in a course of conduct designed to delay and impair the investigation into the use of excessive and unreasonable force," but provide no information on this "course of conduct."  (*See generally id.*).  Finally, Plaintiffs state in a conclusory manner that the Defendant Corrections Officers conspired with one another to cover up the excessive use of force.  (*Id.* ¶ 97).  Such limited allegations, which do not address the basic requirements of a conspiracy claim, *i.e.* meeting of the minds and concerted action, are insufficient to state a claim under *Iqbal*.  *See Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).

Therefore, this claim will be dismissed without prejudice.

### IV.     Conclusion

Based on the foregoing, Defendants' Motion is **GRANTED** as it relates to Defendants Lanigan and Robinson and Plaintiffs' conspiracy claim.  Defendants' Motion is **DENIED** as to Plaintiffs' excessive force and denial of medical care claims.

Plaintiffs are granted leave to file a second amended complaint to address the deficiencies identified above within thirty days, **but the failure to file a second amended complaint or to remedy the deficiencies identified above may result in a dismissal *with prejudice***.

An appropriate order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**